IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 10, 2016

# BRIAN O'NEAL ELLIOTT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2011-A-269       Cheryl Blackburn, Judge**

_____

**No. M2015-02000-CCA-R3-PC – July 26, 2016**

_____

In 2012, the Petitioner, Brian O'Neal Elliott, pleaded guilty to second degree murder and was sentenced to twenty-five years of incarceration to be served at 100%. In 2013, the Petitioner filed a *pro se* petition for post-conviction relief. The post-conviction court appointed counsel, who filed an amended petition for post-conviction relief alleging that the Petitioner had received the ineffective assistance of counsel. The post-conviction court held a hearing on the petition and denied relief. We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Brian O'Neal Elliott.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Glen S. Funk, District Attorney General; and Megan King and Bret Gunn, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### I. Facts and Procedural History

This case arises from a shooting death that occurred in Nashville, Tennessee, in retaliation for an alleged rape. For this offense, a Davidson County grand jury indicted the Petitioner for first degree premeditated murder and facilitation of first degree premeditated murder.

## A. Guilty Plea

The Petitioner pleaded guilty to second degree murder and, at the guilty plea hearing, the trial court informed him that he would be sentenced as a Range I offender with a sentencing range of fifteen to twenty-five years. The trial court informed him that his release eligibility would be 100% and asked the Petitioner if he understood this fact. The Petitioner replied that he did not, and his trial counsel (hereinafter "Counsel") informed the trial court that he had mistakenly told the Petitioner that his sentence was not required to be served at 100%. Because of this error, the trial court halted the guilty plea hearing to allow Counsel and the Petitioner to discuss his sentence and release eligibility percentage. After the break in the hearing, the trial court again asked the Petitioner if he understood that, based on his agreement to plead guilty to second degree murder, he would be required to serve 100% of his sentence. The Petitioner responded that he understood and agreed that Counsel had explained to him the range of punishment and release eligibility. The trial court went on to question the Petitioner about his plea discussions with Counsel, whether the Petitioner was confused or had any questions, his highest level of education, and whether he was satisfied with Counsel's representation. The Petitioner informed the trial court that he had discussed his guilty plea and sentence with Counsel and was satisfied with his representation.

The State then recited the following facts which would have been presented had the case proceeded to trial:

> [O]n April 16th, 2010, the victim Miguel Tobias was on the porch of 3710 Ezell Road in Davidson County with another individual. It was mid[-]afternoon, and a car approached the house and stopped. [The victim] went to see what the individuals wanted. When he got close to the car, the front passenger rolled down the window and shot multiple times killing [the victim]. The victim's wife was in the house and heard the shots as did the couple's three young children. The police responded and began their investigation. They learned the make, model, and partial plate number of the car. They later determined that it belonged to Trevarius Maples. As the investigation continued, the detective assigned to the murder learned that there had been a report of a rape at [3710 Ezell Road] . . . three days before the homicide. The victim of that rape [was the Petitioner's niece]. . . . She reported the rape to the police immediately, and the police determined that the man who raped [the Petitioner's niece] was Romel Roberto Guafarro.
>
> On April 16th, 2010, [the Petitioner] picked [his niece] up from middle school. Trevarius Maples was driving the vehicle. When [his

2

niece] got in the car, [the Petitioner] instructed her to show them where the rape occurred. They drove down Ezell Road . . . [and w]hen the car pulled up to the house, there were two men on the porch, one of which was the victim[.] As [the victim] was walking up to the car, [the Petitioner's niece] cried out that he was not the man who had raped her. [The Petitioner] nonetheless rolled down the window and shot [the victim] causing his death.

At the subsequent sentencing hearing, the trial court sentenced the Petitioner to twenty-five years to be served at 100% in the Tennessee Department of Correction.

## B. Post-Conviction Proceedings

The Petitioner filed a petition for post-conviction relief, *pro se*, in which he alleged that he had received the ineffective assistance of counsel. The post-conviction court appointed an attorney, and the attorney filed an amended petition, alleging that the Petitioner had received the ineffective assistance of counsel because: (1) Counsel failed to adequately investigate the case and inform the Petitioner of his purported trial strategy; (2) Counsel failed to adequately represent the Petitioner's interests at the sentencing hearing; (3) the Petitioner's guilty plea was entered involuntarily because he did not understand the nature and consequences of his plea; (4) Counsel pressured him into making a "split second decision" to plead guilty; (5) the Petitioner did not have adequate time to consider his options; and (6) Counsel "guaranteed" he would be sentenced to the minimum fifteen-year sentence and would be eligible for parole after serving eight years.

The post-conviction court subsequently held a hearing, during which the following evidence was presented: the Petitioner testified that his father retained Counsel to represent him at trial. He testified that Counsel visited him in jail one time to discuss his case. The Petitioner received a plea offer from the State on the day of his trial, and he testified that Counsel informed him on that day that his sentence would be fifteen to twenty-five years for second degree murder, and that he would serve 30% of his sentence. When the trial court informed the Petitioner that he would serve his sentence at 100%, the Petitioner said he was not aware of that fact and asked for time to speak with Counsel about his sentence. The Petitioner testified that he felt he had no choice but to plead guilty because he was facing a fifty-one year sentence if his case proceeded to trial. However, the Petitioner then testified that if he had known he could stop the plea proceeding at any time, he would have done so because he felt "coerced" into pleading guilty by the fact that he could be found guilty at trial.

The Petitioner testified that, on the day of the plea, Counsel informed him that he would be eligible for parole after serving eight years. The Petitioner described Counsel

as being "hung up" on the State's offer and thought Counsel was unprepared for trial. The Petitioner said he was not given ample opportunity to weigh the "pros and cons" of going to trial.

On cross-examination, the Petitioner stated that he would seek a trial if his plea was withdrawn. The Petitioner stated that Counsel did not discuss going to trial and that he felt like Counsel was not going to "fight for him" at trial and did not want to "chance it." The Petitioner told Counsel that the State's proposed witnesses would not testify against him. Counsel told the Petitioner that his case was a "clear case" of manslaughter and told the Petitioner he would try to negotiate the best sentence possible for him.

The Petitioner stated that after learning that the State's offer had a release eligibility of 100% during the guilty plea hearing, the Petitioner talked about it with Counsel and decided to plead guilty because the Petitioner "didn't know what else to do." He said he was concerned about the possibility of a fifty-one-year sentence if convicted at trial. The Petitioner agreed that he understood everything the trial court said during the guilty plea hearing. The Petitioner agreed that he told the trial court that he had thoroughly discussed the case with Counsel. The Petitioner repeatedly testified that certain facts were not brought to light that would have changed his decision not to go to trial, but he was unable to articulate any specific facts.

Counsel testified that he had been licensed to practice law in Tennessee since 1956 and that 80% of his practice involved criminal cases. He agreed that he represented the Petitioner in this matter. Counsel agreed that he erroneously told the Petitioner that the State's offer to plead guilty to second degree murder had a 30% release eligibility. When Counsel and the Petitioner left the courtroom to discuss his error after it had been clarified by the trial court, Counsel made it clear to the Petitioner that he was wrong about the 30% release eligibility. He recalled that the trial court corrected him in open court as well. Counsel stated that, "under the facts of the case," he advised the Petitioner to accept the State's plea bargain offer and, stated that, in hindsight, he would give him the same advice again in order to avoid a first degree murder conviction.

Counsel testified that he was prepared to go to trial and had discussed the case with the Petitioner, although he could not recall their specific discussions. Counsel was convinced that the Petitioner had a 90% chance of being convicted of first degree murder if he went to trial. Counsel had no indication that the proposed witnesses would not testify at trial as the Petitioner alleged. He testified that the Petitioner did not have a lot of time to consider the State's plea offer because it was made the morning of trial. He denied telling the Petitioner that he would receive the minimum sentence if he pleaded guilty and stated that he never guaranteed that the Petitioner would get a plea offer for manslaughter.

4

On cross-examination, Counsel agreed that a notice of appeal of the Petitioner's sentence was not filed in this case and that Counsel did not discuss filing one with the Petitioner. Counsel could not recall any of his discussions with the Petitioner about trial strategy and could not recall going over the facts of the case with the Petitioner, although he was confident he had done so. Counsel specifically recalled that there was no pressure on the Petitioner in terms of time as to whether or not he should plead guilty after he learned of the 100% release eligibility percentage.

At the conclusion of the hearing, the post-conviction court found, and all parties agreed, that the Petitioner was entitled to a delayed appeal of his sentence. The post-conviction court granted the Petitioner's delayed appeal and held the Petitioner's post-conviction matter in abeyance pending the outcome of that appeal. The Petitioner appealed to this Court, and we affirmed his sentence. *See State v. Brian Oneal Elliott*, No. M2014-00083-CCA-R3-CD, 2014 WL 5242610 (Tenn. Crim. App., at Nashville, October 15, 2014), *perm. app. denied* (Tenn. Jan. 15, 2015).

The Petitioner then filed a notice of his intent to rest on the evidence presented at the post-conviction hearing regarding the claims in his amended petition for post-conviction relief. The post-conviction court subsequently issued an order denying him relief, stating that it found Counsel to be credible. The post-conviction court concluded that the Petitioner had failed to establish his ineffective assistance of counsel claim by clear and convincing evidence. The post-conviction court stated that the issue of the Petitioner's 100% release eligibility was addressed in open court and that the Petitioner affirmed that he had not been forced by Counsel to accept the State's offer. The post-conviction court further concluded that the Petitioner had failed to establish that his plea was not knowingly and voluntarily entered. It found that the record demonstrated that the Petitioner was aware of the consequences of his plea. It is from the post-conviction court's judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner contends on appeal that the post-conviction court erred when it denied his petition because he received the ineffective assistance of counsel and because his plea was involuntarily entered. The State responds that the record shows that his plea was voluntarily entered, based on his affirmation of his understanding of the plea during an extensive plea colloquy, and that Counsel's representation of the Petitioner was effective as demonstrated by the favorable plea bargain that the Petitioner received. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her

conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v.*

*Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

We conclude that the post-conviction court did not err when it determined that the Petitioner had not proven by clear and convincing evidence that he had received the ineffective assistance of counsel. Counsel testified that he advised the Petitioner to take the State's plea bargain offer because it was highly likely that the Petitioner would be convicted of first degree murder if he went to trial. The State had a strong case against the Petitioner, and Counsel testified that he expected the State's witnesses to testify at trial, further confirming his opinion that the Petitioner should accept the State's offer of second degree murder. After mistakenly informing the Petitioner of a 30% release eligibility, Counsel discussed the Petitioner's potential sentence with him and still advised him to plead guilty on the consideration that the Petitioner would receive half the sentence he would be eligible for if found guilty at trial. The Petitioner testified that he felt Counsel was ineffective because he did not bring out certain facts during investigation and because the Petitioner felt coerced to plead guilty based on the fact that

7

he was facing fifty-one years if convicted. The Petitioner has not shown by clear and convincing evidence that he received the ineffective assistance of counsel based on Counsel's advising him to plead guilty, and the Petitioner has not articulated the facts that Counsel should have presented.

We also conclude that the Petitioner has not shown that his plea was entered involuntarily. At the guilty plea hearing, the Petitioner expressed his understanding of the implications of his decision to plead guilty and affirmed that he did not wish to proceed to trial which is evidence that the Petitioner was not coerced. The trial court asked him numerous times whether he had questions or concerns about his plea or his sentencing range and release eligibility percentage. The Petitioner had ample opportunity to express his discomfort with or misunderstanding of his guilty plea. The Petitioner has not proven by clear and convincing evidence that his plea was not entered knowingly and voluntarily, as he has not provided any evidence that shows that his plea was not voluntarily entered. Accordingly, we conclude that the Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

8